IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| Linda H. o/b/o K.S., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:18CV00632 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| Andrew Saul, | ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Linda H. filed this action on behalf of her grandson, K.S., challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for child's supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383(d). Jurisdiction of this court is established pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

By order entered June 27, 2019, the court referred this case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). On February 6, 2020, the magistrate judge submitted a report in which he recommends that the Commissioner's final decision be affirmed. Plaintiff has filed objections to the magistrate judge's report, the Commissioner has responded to those objections, and the matter is now ripe for the court's consideration.

This court is charged to conduct a de novo review. See 28 U.S.C. § 636(b)(1). The court's review is limited to a determination as to whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

On April 22, 2016, Linda H. filed an application for child's supplemental security income benefits on behalf of K.S, R. 389–98, who has lived with her since the age of 2, R. 59.[1] Plaintiff's claim was denied upon initial consideration and reconsideration. R. 285, 297. Plaintiff then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated July 16, 2018, the Law Judge also concluded that plaintiff is not entitled to child's supplemental security income benefits. In terms of the regulatory scheme established for the adjudication of child's supplemental security income claims, the Law Judge found that plaintiff has no limitation in acquiring and using information and a less than marked limitation in the remaining five domains. The Law Judge gave "significant weight" to plaintiff's teachers' evaluations for all domains except acquiring and using information. R. 23. The Law Judge gave the teachers' evaluations in that domain "little weight" because his grades were "consistently good," and the reasons that the teachers offered in support of their ratings were more relevant to plaintiff's ability to attend and complete tasks and interact with peers. R. 23–24. The Law Judge also gave "significant weight" to the reports of the state agency psychologists because they had reviewed all the available medical evidence in the record, and cited specific evidence to justify their findings. R. 24. In addition, the Law Judge noted that the medical and educational records supported much of the plaintiff's and Linda's testimony, but not always to the severity they described. The Law Judge attributed this gap to the possibility that Linda was describing plaintiff's untreated symptoms, which the Law Judge found have improved with pharmaceutical intervention and counseling treatment over time. R. 24–25. The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Linda has now appealed to this court.

---

[1] For purposes of consistency and clarity, K.S. shall hereinafter be referred to as the plaintiff in this case.

A child is disabled under the Social Security Act if he has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A three-step inquiry is used to assess whether a child meets this definition. 20 C.F.R. § 416.924. The first determination is whether the child is working and performing substantial gainful activity. Id. § 416.924(b). If the child is not working, it must then be decided whether the child suffers from a severe impairment or combination of impairments. Id. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment(s) meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. Id. § 416.924(d).

To determine whether an impairment is functionally equivalent to a listed impairment, the Law Judge evaluates its severity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id. § 416.926a(b)(l). Functional equivalence exists if the Law Judge finds a "marked" limitation in two areas of functioning or an "extreme" limitation in one area of functioning. Id. § 416.926a(d). In this case, the Law Judge concluded that plaintiff does not experience a "marked" or "extreme" limitation in any functional domain, and therefore does not qualify for supplemental security income benefits.

As previously noted, the court referred this case to a magistrate judge for a report setting forth findings of fact, conclusions of law, and a recommended disposition. In his report, the magistrate judge recommended that the court affirm the final decision of the Commissioner denying plaintiff's claim for child's supplemental security income benefits. Succinctly stated, the magistrate judge determined that substantial evidence supports the Law Judge's determinations.

3

In her objections to the report and recommendation, Linda challenges the Law Judge's findings in the domains of attending and completing tasks, interacting and relating with others, and caring for himself, and the Law Judge's credibility determination as to Linda's testimony. In particular, Linda argues that it was an error to rely on the state agency psychologists who had performed their examination before certain evidence entered the record. Linda also argues that the Law Judge improperly determined that plaintiff does not have a marked limitation in his ability to interact with and relate to others because he did not react violently or aggressively. ECF No. 22. After reviewing the record, the court agrees that the Law Judge's analysis as to the domain of interacting to and relating with others was incomplete such as to frustrate meaningful review. Accordingly, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

The administrative regulations applicable to a claim for child's supplemental security income benefits provide that the Social Security Administration will "consider all evidence in [the] case record" in determining a child's functioning, including information from medical sources and nonmedical sources. 20 C.F.R. § 416.924a. These regulations also recognize that school records, including reports from teachers, are "important sources of information" regarding a claimant's impairment(s) and the resulting impact on his ability to function. 20 C.F.R. § 416.924a(b)(7). The regulations provide—speaking to the claimant—that if you go to school, "we will ask your teacher(s) about your performance in your activities throughout your school day," and "[w]e will consider all the evidence we receive from your school, including teacher questionnaires . . . ." Id. The regulations also state that: "Children may function differently in unfamiliar or one-to-one settings than they do in their usual settings at home, at school, in childcare or in the community. . . . We will look at your performance in a special situation and at your typical day-to-day functioning

4

in routine situations. We will not draw inferences about your functioning in other situations based only on how you function in a one-to-one, new, or unusual situation." 20 C.F.R. § 416.924a(b)(6).

Although "there is no rigid requirement that the [Law Judge] specifically refer to every piece of evidence in his decision," Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citation and internal quotation marks omitted), a "necessary predicate to engaging in substantial evidence review is a record of the basis for the [Law Judge's] ruling," Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). The United States Court of Appeals for the Fourth Circuit has explained that "[t]he record should include a discussion of which evidence the [Law Judge] found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. "If the reviewing court has no way of evaluating the basis for the [Law Judge's] decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Id. (citation and internal quotation marks omitted).

In this case, numerous medical professionals examined plaintiff at various times, several on a continuing basis: Dr. Mohamed Kadiri, M.D., on February 16, 2016, Dr. Mary Gaskill, M.D., on May 18, 2016, Dr. Sarah Shepherd, M.D., on April 26, 2017, Dr. Jerita Dubash, M.D., on May 9, 2017, and Dr. James Wilson, III, M.D., on February 28, 2018, all of whom diagnosed K.S. with attention deficit hyperactivity disorder ("ADHD") and additional behavioral disorders. R. 580–581, 670–673, 941–945, 882–885, 1260–1267.

After an April 20, 2016 appointment, Dr. Shephard reported that plaintiff suffers from sensory issues with noise and light, has touch issues with his clothes, and has tendencies to lick, chew on, and hyper focus on things. R. 571. She identified other issues including inexplicable meltdowns, yelling and screaming, acting defiantly, wanting to hide, not making eye contact, engaging in repetitive behaviors, and hitting himself. R. 571–572. On October 5, 2018, Dr.

5

Dubash noted that plaintiff's anxiety and ADHD issues continued and prescribed him additional Adderall, but indicated that plaintiff was not an "imminent threat" to his safety or others' with "constant supervision." R. 243–246.

In addition, Mary Hannick, a qualified mental health professional, performed a face-to-face visit at plaintiff's school on May 25, 2016. She noted that plaintiff pushed a peer and yelled at him while they were waiting in line for ice cream, and indicated that she had to speak to him twice about keeping his hands to himself and yelling at his peers. R. 674. Another qualified mental health professional, Rachel Jackson, reported on September 11, 2017 that plaintiff was scared of a boy at school who made him "do things," that plaintiff "doesn't like to use his words," and was unable to explain why he chews on his shirt and puts his hands in front of his face when he is excited. R. 1042.

State agency psychologists also submitted opinions. Lewis Perrott, Ph.D., opined on September 22, 2016 that plaintiff has less than marked limitations in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. R. 275–84. He also opined that plaintiff has no limitation in the domain of caring for himself or health and physical well-being. Id. Leslie Montgomery, Ph.D., rendered a similar opinion on February 1, 2017, making two changes. She opined that plaintiff has no limitation in the domain of acquiring and using information but a less than marked limitation in the domain of caring for himself. R. 286–95.

Plaintiff also submitted large amounts of evidence from his teachers. For example, plaintiff's pre-school teacher filled out a "Teacher Questionnaire" dated August 26, 2016. R. 520–28. In attending and completing tasks, the pre-school teacher reported that plaintiff had an obvious problem waiting to take turns and working without distracting himself or others. R. 523. In

interacting and relating with others, she indicated that plaintiff had obvious problems—on a daily basis—with playing cooperatively with children, seeking attention appropriately, expressing anger appropriately, following rules, respecting/obeying adults in authority, and taking turns in a conversation.  R. 524.

Plaintiff's kindergarten teacher also filled out a Teacher Questionnaire dated January 20, 2017.  R. 501–19.  In the area of interacting and relating with others, she reported that plaintiff has a serious problem expressing anger appropriately with an hourly frequency and an obvious problem playing cooperatively with children and making and keeping friends.  R. 505.  She also noted that plaintiff "has frequent conflicts [with] peers."  R. 509.

In an email dated September 8, 2017, plaintiff's first-grade teacher relayed that plaintiff had been trying to cut his hair and clothes with scissors, and that it was "not the first time" it had happened.  R. 557.  In an email dated September 22, 2017, she also related an incident in which plaintiff had swung his arms around and struck another student, but apologized afterwards, and had chased after and hit another student with a chalk lid.  R. 555.  In a note dated April 16, 2018, plaintiff's first-grade teacher indicated that he had hit two different students in separate instances that day, and twisted another student's arm.  Plaintiff said he didn't remember the incidents when asked about them.  R. 559.

The Law Judge held a hearing on May 1, 2018, at which both Linda and plaintiff provided testimony.  Plaintiff, then seven years old, testified about receiving punishments from teachers including walking laps and silent lunches, and sitting down in his "special place" when anxious up to 39 times a day.  R. 47–58.  Plaintiff also testified that he has only one friend at school, and that he has problems with two boys who do not like him and try to distract him from doing his work.  Id.

7

Linda testified that plaintiff has been diagnosed with ADHD, which prevents him from focusing and that he constantly chews things such as batteries and his clothing, opens and closes his hands, and is often in motion. R. 61–62. Linda reported that plaintiff sometimes zones in on one thing and "spazzes out." R. 63. Linda also characterized as misleading school reports that grade plaintiff as meeting or exceeding expectations in all categories except work habits. R. 63–64. She further relayed that a neurologist had referred to plaintiff's condition as autism. R. 65. Linda, however, acknowledged that two other evaluations determined that plaintiff has autistic symptoms but not autism. R. 65–66; see also R. 605–07; R. 1250–1256. Linda testified that, among other things, loud noise, bright light, and heat affect plaintiff, that clothing tags bother him, that he has often darted dangerously into traffic, that he has problems with impulse control including rearranging things in the home, and that he has difficulties reading social cues, and mood swings. R. 71, 77, 93–94, 96–97, 111. She further related that plaintiff "get[s] along excellent" with a neighbor's grandson and with other older children. R. 85. Nonetheless, Linda described incidents in which plaintiff throws food, kicks, and hides in public. R. 66, 85. Further, Linda relayed reports from teachers that plaintiff had hit other students and "twisted their arms," and was "aggressive to other kids." R. 73, 87, 90.

As noted above, the Law Judge found plaintiff has a less than marked limitation in the domain of interacting and relating with others. R. 28–29. The Law Judge also found that plaintiff's teachers had described "slight to obvious problems" in this domain. R. 29, 529. One teacher, however, noted that plaintiff has a "serious" problem with "expressing anger appropriately" on an hourly basis. R. 505. Linda testified regarding similar issues as well. In his decision, the Law Judge noted that, while the plaintiff became upset on occasion, he did not "react aggressively or violently," and "mostly whined or pouted," but that he got along well with adults. R. 29.

8

While aggressive or violent behavior is not necessary to find a marked limitation in this domain, such evidence is in the record, much of which was received after the state agency psychologists performed their evaluations. Yet the Law Judge did not specifically address several of the incidents—documented by multiple sources in the record—in which plaintiff was said to have hit other students, nor did the Law Judge note what weight he had ascribed to them, and the reasons for assigning such weight. R. 22 (Plaintiff "sometimes had a difficult time keeping his hands to himself."), 23, 29; see also, e.g., R. 73, 87, 90. The court thus "cannot determine if findings are []supported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Accordingly, the court cannot conclude that the Law Judge's determination in this domain is supported by substantial evidence. See Knight ex rel. P.K. v. Colvin, 756 F.3d 1171, 1177 (10th Cir. 2014) (ordering remand where Law Judge "did not expressly reject any of the[] reported behaviors" of aggression when assessing this domain); Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 703 (7th Cir. 2009) (similar); Brown o/b/o D.B. v. Berryhill, No. 7:18-CV-00158, 2019 WL 2361050, at *4–5 (W.D. Va. June 4, 2019) (Conrad, J.) (Law Judge "did not address" specific reports of aggression or "adequately explain" why those incidents did not "support more significant limitations in this particular functional domain"); Caldwell o/b/o A.C. v. Berryhill, No. 7:16-CV-135, 2017 WL 2964898, at *5 (W.D. Va. June 14, 2017), report and recommendation adopted, No. 7:16-CV-135, 2017 WL 2964829 (W.D. Va. July 11, 2017) (similar).

Further, the Law Judge appears to have relied heavily on his own determination that plaintiff was "articulate and conversed well at the hearing." Id. In doing so, the Law Judge failed to evaluate this factor under the appropriate legal standard. See 20 C.F.R. § 416.924a(b)(6) ("We will not draw inferences about your functioning in other situations based only on how you function

9

in a one-to-one, new, or unusual situation."). An administrative hearing is certainly a "new[] or unusual situation" for a seven-year-old child, and the Law Judge should not have drawn inferences about plaintiff's functioning at home and at school from his functioning in the hearing, away from classmates and family, but in the presence of a new authority figure. Id.; see also R.S. by & through Herrera v. Berryhill, 357 F. Supp. 3d 1033, 1038 (C.D. Cal. 2019) (holding that a "conclusory observation based on a one-time consultative examination likely provides little significant or probative evidence of plaintiff's overall functioning") (citing 20 C.F.R. § 416.924a(b)(6)); Appleberry o/b/o R.A. v. Comm'r of Soc. Sec., No. 6:18-CV-6237, 2019 WL 4929828, at *7 (W.D.N.Y. Oct. 7, 2019) (similar); Bass as Guardian ad Litem for ANHB v. Astrue, No. 7:09-CV-72, 2010 WL 538453, at *12 (E.D.N.C. Feb. 11, 2010) (similar).

For all of these reasons, the court concludes that the Law Judge failed to build an "accurate and logical bridge" from the evidence to his conclusion that plaintiff has less than marked limitations in the domain of interacting and relating with others. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted). Remand is proper because the court cannot determine whether the Law Judge would have found an "extreme" limitation in this area but for these errors, 20 C.F.R. § 416.926a(d), and thus whether plaintiff's impairment would functionally equal one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix I. Radford, 734 F.3d at 296 (ordering remand, rather than making factual determinations "in the first instance"). As a result, this error is not necessarily harmless.[2]

Thus, the court finds "good cause" to remand this case to the Commissioner for further development and consideration. If the Commissioner is unable to decide the case in plaintiff's

---

[2] In light of the court's decision to remand the case to the Commissioner, the court declines to address plaintiff's remaining claims of error. The court does agree, however, that it is troublesome that the Law Judge ascribed "significant weight" to the state agency psychological reports when these evaluations were completed before many of the educational reports were made part of the evidence.

10

favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send copies of this memorandum opinion all counsel of record.

DATED: This __25th__ day of March, 2020.

                                                                        _/s/ Glen Conrad_
                                                                 Senior United States District Judge